ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **DANNY ADRIEL SANTIAGO NÚÑEZ**<br><br>Apelado<br><br>v.<br><br>**LUIS JAVIER HERNÁNDEZ ORTIZ, MARENA NAVARRO**<br><br>Apelantes | KLAN202401103 | **APELACION**<br>procedente del Tribunal de Primera Instancia, Sala Superior de **Ponce**<br><br>Civil Núm.: **PO2024CV03439**<br><br>Sobre: Mandamus al Amparo del Artículo 2.001(d)(3) |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

Comparecen ante nos, mediante *Apelación* presentada el 9 de diciembre de 2024, el Honorable Luis Javier Hernández Ortiz, como Alcalde Saliente del Municipio de Villalba (Hon. Hernández Ortiz o Alcalde Saliente), y el Comité de Transición Saliente, representado por su presidenta, la licenciada Marena Navarro Rivera (Lcda. Navarro Rivera) (en conjunto, Apelantes). Mediante el recurso apelativo presentado, los comparecientes le solicitan a este Tribunal que revoque la *Sentencia* emitida el 4 de diciembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI),[1] en la que declaró Ha Lugar la *Petición de Mandamus (Enmienda)*, presentada el 27 de noviembre de 2024 por el señor Danny Adriel Santiago Núñez, Alcalde Electo del Municipio de Villalba (Sr. Santiago Núñez o Alcalde Electo).[2]

---

[1] Apéndice de *Apelación*, Anejo II, págs. 2-14. Notificada y archivada en autos el 4 de diciembre de 2024.
[2] *Íd.*, Anejo XII, págs. 72-79.

Número Identificador
SEN2024 _____

**I.**

El 5 de noviembre de 2024, se celebraron las Elecciones Generales, en las que el Pueblo de Puerto Rico ejerció su derecho constitucional y eligió a las personas que los representarán en el Gobierno para el cuatrienio de 2025-2029. El 10 de noviembre de 2024, tras contabilizar el 100% de los colegios reportados en la noche del evento, la Comisión Estatal de Elecciones certificó al Sr. Santiago Núñez como Alcalde Electo del Municipio de Villalba.[3] En consecuencia, el 12 de noviembre de 2024, en cumplimiento con el Artículo 2.001 del Código Municipal de Puerto Rico, Ley Núm. 107-2020, según enmendada, 21 LPRA sec. 7141 (Código Municipal), el Alcalde Electo le informó al Hon. Hernández Ortiz del nombramiento de su Comité de Transición Entrante (Comité Entrante), con la licenciada Denisse Maldonado Rosa (Lcda. Maldonado Rosa) como su Presidenta.[4] Una semana más tarde, el 19 de noviembre de 2024, la Lcda. Navarro Rivera le remitió al Comité Entrante los nombres de los miembros del Comité de Transición Saliente (Comité Saliente).[5]

El 21 de noviembre de 2024, la Lcda. Maldonado Rosa le solicitó formalmente a la Lcda. Navarro Rivera que le entregara copia del Informe de Transición el 25 de noviembre de 2024, para poder realizar los análisis correspondientes de manera organizada y oportuna.[6] No obstante, el 22 de noviembre de 2024, la Lcda. Navarro Rivera le indicó que no podría entregarlo el 25 de noviembre, por lo que lo estaría entregando el 27 de noviembre de 2024.[7] El 24 de noviembre de 2024, la Lcda. Maldonado Rosa se reiteró en que el Informe de Transición debería ser presentado el 25 de noviembre de 2024, no más tardar de las 4:30 PM. Esto a la luz

---

[3] *Íd.*, Anejo XIII, págs. 88-90.
[4] *Íd.*, pág. 91.
[5] *Íd.*, pág. 92.
[6] *Íd.*, pág. 93.
[7] *Íd.*

de que el Artículo 2.001 (g) (2) del Código Municipal dispone que "[l]os Informes de Transición de los municipios estarán finalizados en o antes del 31 de octubre del año eleccionario".[8]

Pasado el 25 de noviembre de 2024 sin haberse sometido el Informe de Transición, el 26 de noviembre de 2024, el Alcalde Electo presentó una *Petición de Mandamus* ante el TPI, para que este le ordenara al Comité Saliente a que presente el Informe de Transición.[9] Presentó la *Petición de Mandamus* en contra del Alcalde Saliente, Hon. Hernández Ortiz, y el Comité Saliente, representado por la Lcda. Navarro Rivera, como su Presidenta. Posteriormente, el 27 de noviembre de 2024, el Alcalde Electo presentó una *Petición de Mandamus (Enmienda).*[10]

El 3 de diciembre de 2024, la parte demandante notificó al TPI que diligenció los emplazamientos el día 2 de diciembre de 2024.[11] Mediante los emplazamientos, la parte demandada fue citada a la Vista de *Mandamus* pautada para el 4 de diciembre de 2024, así como notificada de la *Petición de Mandamus* y sus anejos, y de su deber de levantar cualquier alegato responsivo en o antes del 3 de diciembre de 2024.[12]

El 3 de diciembre de 2024, la parte demandada presentó una *Moción de Desestimación,* en la que compareció "de manera especial y sin someterse a la jurisdicción [del TPI]".[13] Anejó con la *Moción de Desestimación* evidencia de haber tramitado el Informe de Transición al Comité Entrante el 27 de noviembre de 2024.[14] Mediante la referida *Moción de Desestimación,* le solicitó al TPI que desestimara la *Petición de Mandamus* por el TPI carecer de

---

[8] *Íd.*, págs. 94-95.
[9] *Íd.*, págs. 80-87.
[10] *Íd.*, Anejo XII, págs. 72-79. (Mediante *Orden* emitida ese mismo día, el TPI autorizó la presentación de la *Petición de Mandamus (Enmienda)*; *Íd.*, Anejo XI, pág. 71.).
[11] *Íd.*, Anejo VII, págs. 50-56.
[12] *Íd.*
[13] *Íd.*, Anejo VI, págs. 21-43.
[14] *Íd.*, págs. 44-49.

jurisdicción sobre la materia y sobre las personas de los demandados.

En primer lugar, señaló que el TPI erró al designar el plazo para que la parte demandada presentase su alegato responsivo a la *Petición de Mandamus*. En vez de los sesenta (60) días que dispone la Regla 10.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.1, el TPI le dio un (1) día a la parte demandada para presentar sus defensas. Por otro lado, la Regla 4.4 de Procedimiento Civil, *Íd.*, R. 4.4, dispone que el emplazamiento debe contener copia de la demanda, pero el emplazamiento en el caso de autos incluía copia de la demanda enmendada, no de la demanda original.[15]

En segundo lugar, alegó que la parte demandante enfrentaba un problema de justiciabilidad. Sostuvo que la presentación del Informe de Transición tornó académica la controversia, puesto que este era el remedio que perseguían los demandantes. También argumentó que no estaban presentes ninguna de las otras excepciones a la doctrina de academicidad que permitieran que el pleito continúe.[16] Arguyó que el promovente carecía de legitimación activa al no presentar un daño claro, inmediato y preciso. Señaló que los daños que alegó la parte demandante son especulativos, puesto que no existe prueba que sugiera que vayan a haber renuncias futuras de los miembros del Comité Saliente, que el Comité Saliente le haya entregado al Comité Entrante información insuficiente en el Informe de Transición o el posible cierre de operaciones municipales por la época navideña.[17] Además, arguyó que la alegación de daños posibles que no hayan ocurrido presenta un problema de madurez que afecta la legitimación activa de la parte demandante.[18] También señaló que la *Petición de Mandamus*

---

[15] *Íd.*, págs. 25-31.
[16] *Íd.*, págs. 32-34.
[17] *Íd.*, págs. 34-36.
[18] *Íd.*, págs. 36-37.

presentada le solicitaba al TPI una opinión consultiva sobre controversias especulativas o hipotéticas.[19]

En tercer lugar, alegó que no procedía el remedio extraordinario del *mandamus*, puesto que no se alega incumplimiento con deberes ministeriales en ley.[20]

Finalmente, arguyó que el Comité de Transición Saliente no tenía personalidad jurídica para ser demandado, por lo que hacía falta la inclusión de sus miembros como partes indispensables. Al únicamente emplazar a la Presidenta del Comité, no se adquirió jurisdicción sobre la entidad. Sugiere que no existe intención legislativa evidente en el Código Municipal para otorgarle al Comité de Transición una personalidad jurídica independiente a la de sus miembros. Comparó dicha entidad con una sucesión hereditaria.[21]

Así las cosas, el 4 de diciembre de 2024, el TPI dictó *Sentencia* en la que declaró Ha Lugar la *Petición de Mandamus (Enmienda)*.[22] Atendiendo los señalamientos jurisdiccionales presentados por la parte demandada, resolvió que:

En cuanto a los emplazamientos, señaló que el Artículo 1.018 (e) del Código Municipal, *supra*, establece la facultad del Alcalde para representar al Municipio en acciones judiciales. Por lo tanto, no existe controversia en que el emplazamiento al Alcalde Saliente, fue diligenciado conforme a la ley. Por otro lado, señaló que la Lcda. Navarro Rivera fue acumulada como representante del Comité Saliente, como su Presidenta. Ella fue nombrada por el Alcalde Saliente. En lo sucesivo, ella nombró a los miembros del Comité Saliente, a quienes se le delegó la facultad de proveer el Informe de Transición al Comité Entrante. Finalmente, el TPI concluyó que los demandados realizaron actos sustanciales y afirmativos en el pleito,

---

[19] *Íd.*, págs. 38-39.
[20] *Íd.*, págs. 39-41.
[21] *Íd.*, págs. 41-43.
[22] *Íd.*, Anejo II, págs. 2-14. (Mediante *Orden* dictada el 4 de diciembre de 2024, dejó sin efecto la Vista de *Mandamus* pautada para ese día).

al no solamente levantar la defensa de falta de jurisdicción personal, sino también levantar defensas específicas atendiendo las alegaciones de la parte demandante. En ese sentido, se sometieron voluntariamente a la jurisdicción del Tribunal, por lo que no existía falta de jurisdicción sobre los demandados.[23]

En cuanto al alegado problema de justiciabilidad que presentó la parte demandada, el TPI sostuvo que la controversia no era académica. Citando lo dispuesto en el Artículo 2.001 (b) del Código Municipal, *Íd.*, el Alcalde Electo y su Comité Entrante tienen derecho a solicitar toda la información necesaria y relevante para una transición adecuada hasta el 31 de diciembre del año eleccionario, fecha en la que culmina el proceso de transición. Por lo tanto, el TPI concluyó que existía una controversia viva puesto que el Comité Saliente tiene el deber de cooperar en el proceso de transición hasta tanto este culmine.[24]

Finalmente, el TPI determinó que existía un deber ministerial por parte del Alcalde y el Comité Saliente para iniciar, participar, y permitir que el proceso de transición se lleve a cabo en el Municipio de Villalba. Dicho deber se desprende del Artículo 2.001 (c) del Código Municipal, *Íd.*, que dispone que "[t]odos los Alcaldes, sus representantes o funcionarios designados tienen la obligación y el deber ministerial de participar en el proceso de transición de su municipio". Además, el Artículo 2.001 (d) del Código Municipal, *Íd.*, establece el *mandamus* como remedio disponible para obligar al "Alcalde Saliente, sus representantes o funcionarios designados al Comité de Transición" a cumplir con lo dispuesto en el Artículo 2.001.

Por lo tanto, al entender que no existía impedimento jurisdiccional, y no habiendo justificación para no ordenar el

---

[23] *Íd.*, Anejo II, pág. 13.
[24] *Íd.*, págs. 13-14.

*mandamus*, el TPI lo declaró Ha Lugar. Inconforme, el 9 de diciembre de 2024, los demandados, ahora Apelantes, presentaron el recurso ante nuestra consideración. En dicha comparecencia, presentaron los siguientes señalamientos de error:

> **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ASUMIR JURISDICCIÓN SOBRE LA MATERIA Y DICTAR UN AUTO DE *MANDAMUS* EN UN CASO QUE NO ERA JUSTICIABLE POR SER UN PLEITO ACADÉMICO, LAS CONTROVERSIAS COLATERALES SER TOTALMENTE PREMATURAS Y EL DAÑO ALEGADO SER UNO ESPECULATIVO E HIPOTÉTICO AL MOMENTO DE PRESENTARSE EL RECLAMO JUDICIAL.**
>
> **ERRÓ EL HONORABLE TRIBUNAL *A QUO* AL RESOLVER QUE TENÍA JURISDICCIÓN SOBRE LOS DEMANDADOS APELANTES PORQUE ESTOS SE SOMETIERON A SU JURISDICCIÓN AL PRESENTAR LA MOCIÓN DISPOSITIVA POR FALTA DE JURISDICCIÓN.**
>
> **ERRÓ EL *NISI PRIUS* AL EXPEDIR UN AUTO DE *MANDAMUS* CON EFECTOS SOBRE TERCEROS QUE NO SE ACUMULARON COMO PARTES DEMANDADAS, AUN CUANDO EL "COMITÉ DE TRANSICIÓN SALIENTE" CARECE DE PERSONALIDAD JURÍDICA Y TENÍAN QUE ACUMULARSE SUS MIEMBROS COMO PARTES INDISPENSABLES.**
>
> **ERRÓ EL HONORABLE FORO *A QUO* AL LIBRAR UN AUTO DE *MANDAMUS* SIN CELEBRAR UNA VISTA EVIDENCIARIA PREVIA, CUANDO ERA NECESARIA A TENOR CON LAS CONTROVERSIAS PLANTEADAS, LO QUE VIOLENTÓ EL DERECHO CONSTITUCIONAL A UN DEBIDO PROCESO DE LEY DE LOS DEMANDADOS-APELANTES; Y AL FUNDAR EL MISMO EN LAS ALEGACIONES DE LA PARTE DEMANDANTE-APELADA.**

Este Tribunal le concedió a la parte apelada hasta el miércoles, 18 de diciembre de 2024, para que presentase un alegato en oposición al recurso apelativo. No obstante, el Sr. Santiago Núñez no ha comparecido ante este Foro, por lo que resolveremos sin su comparecencia.

**II.**

**A.**

Sabido es que los tribunales de Puerto Rico solamente pueden afectar los derechos de las personas sobre las cuales tienen jurisdicción. "En el ordenamiento jurídico puertorriqueño, jurisdicción significa la potestad de aplicar las leyes en asuntos civiles y criminales, declarando, juzgando y haciendo ejecutar lo

juzgado". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho procesal civil*, 6ª ed. rev., Puerto Rico, LexisNexis de Puerto Rico, 2017, pág. 33. En ese sentido, la jurisdicción es "el poder o autoridad de un tribunal para considerar y decidir casos o controversias". *Gearheart v. Haskell Burress*, 87 DPR 57, 61 (1963).

La jurisdicción sobre la materia "se define como la capacidad del Tribunal para atender y resolver una controversia sobre un aspecto legal". *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020). La misma se concede por ley, por lo que el Estado es la única entidad que puede privar a un tribunal de esta jurisdicción. Contrario a la jurisdicción sobre la persona, la falta de jurisdicción podrá ser levantada en cualquier etapa de los procedimientos. Su falta acarrea las siguientes consecuencias:

> (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio.

*Íd.*, págs. 101-102.

**B.**

El concepto de la justiciabilidad agrupa una serie de doctrinas particulares que tratan sobre los atributos necesarios que un asunto debe poseer para que un tribunal de justicia pueda atenderlo y resolverlo en los méritos como parte de su función judicial. J.M. Farinacci Fernós, *La justiciabilidad en Puerto Rico*, 1ª ed. rev., San Juan, Interjuris, 2024, pág. 19. Dichas doctrinas incluyen la legitimación activa, la academicidad, la madurez y la prohibición de pleitos consultivos. *Íd.*, pág. 21. Cuando un tribunal determina que una controversia no es justiciable, lo procedente, por lo general, es la desestimación inmediata del pleito. *Ortiz v. Panel F.E.I.*, 155 DPR

219, 252 (2001). No obstante, "[e]n determinadas ocasiones, la desestimación de un pleito o la abstención en cuanto un asunto procede como medida de autolimitación y discreción judicial". J.M. Farinacci Fernós, *op. cit.*, pág. 54. Para la mayor comprensión de las doctrinas relevantes al caso de autos, estaremos atendiéndolas individualmente, comenzando con la legitimación activa.

## Legitimación Activa

"El principio de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente el Poder Judicial". *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738 (2022). En ese sentido, la legitimación activa es la capacidad para promover una acción judicial, por lo que el análisis se concentra en la situación de la parte que presenta la acción, y no en el caso o asunto ante el tribunal. J.M. Farinacci Fernós, *op. cit.*, pág. 121.

La legitimación activa en Puerto Rico puede surgir de varias fuentes, pero por lo general, surge de una autorización estatutaria o cuando la parte cumple con los requisitos reconocidos jurisprudencialmente. Para esta determinación, debemos evaluar los elementos constitutivos de la causa de acción reclamada y la situación fáctica de la parte promovente. *Íd.*, pág. 138. Cuando la legitimación activa proviene de una concesión legislativa, los tribunales no deben solamente analizar el texto de la ley, sino también la intención legislativa detrás de la misma. *Salas Soler v. Srio. de Agricultura*, 102 DPR 716 (1974).

En el caso particular de un Alcalde Electo que presenta una demanda de *mandamus* para que el Alcalde Saliente ejerza algún deber ministerial, recurrimos al texto del Código Municipal, *supra*. De una lectura sencilla del Artículo 2.001 (d) del Código Municipal surge que el Legislador le ha otorgado al Alcalde Electo una causa

de acción en contra del Alcalde Saliente para que este cumpla con sus deberes ministeriales. El referido Artículo dispone que:

> Si **el Alcalde Saliente, sus representantes o funcionarios** designados al Comité de Transición, se niegan a reunirse o a cumplir con las disposiciones de este Artículo, el Alcalde Entrante podrá incoar un procedimiento extraordinario de mandamus ante la Sala del Tribunal de Primera Instancia del distrito judicial donde radique el municipio, para **obligar a dicho Alcalde Saliente o al Comité de Transición Saliente** a reunirse o a que cumpla con este Artículo.

*Íd.*, Artículo 2.001 (d). (Énfasis nuestro).

Dicha causa de acción no puede ser presentada a la libre discreción del Alcalde Electo o Entrante, sino que la capacidad para presentar una acción judicial requiere que se cumplan con los elementos de la acción según el estatuto. Podemos colegir que la petición de *mandamus* que establece la ley podrá ser presentada: (1) por el Alcalde Electo o Entrante; (2) cuando el Alcalde Saliente, sus representantes o funcionarios designados al Comité de Transición; (3) se han negado a reunirse o cumplir con las disposiciones del Artículo 2.001 del Código Municipal; y, (4) el remedio solicitado es obligar a la parte incumpliente, sea el Alcalde Saliente o el Comité Saliente, a cumplir con el Artículo 2.001 del Código Municipal.

### Academicidad

La doctrina de la academicidad es una pragmática que busca evitar que los tribunales se expresen sobre asuntos o controversias muertas o ya resueltas. "El elemento determinante en este análisis es el efecto que tendrá el fallo judicial que pueda emitirse con miras a resolver la controversia presentada inicialmente". *Íd.*, pág. 187. Por lo general, una controversia se torna académica cuando la determinación que emita el tribunal no tenga efectos prácticos.

No obstante lo anterior, aun cuando una controversia se torne académica, la doctrina establece una serie de excepciones para que un tribunal emite una determinación en sus méritos. Las excepciones reconocidas son: (1) cuando hay una cuestión

recurrente que, por su naturaleza, evade la revisión judicial; (2) la terminación voluntaria de la conducta impugnada sin visos de permanencia; (3) cuando se ha certificado un pleito de clase y la controversia en cuanto a un miembro de esta, incluido uno de sus representantes, ha advenido en académica, más no así para la clase en su totalidad; y, (4) cuando subsisten consecuencias colaterales.

### Madurez

La madurez es una doctrina similar a la academicidad por su análisis basado en la temporalidad de la acción judicial. *Íd.*, pág. 171. La doctrina de la madurez se enfoca en si la controversia planteada esta lista para ser adjudicada. Dicho análisis se enfoca en las circunstancias de la controversia presentada y conlleva un análisis dual que consiste en determinar: (1) si la controversia sustantiva es apropiada para la resolución judicial; y, (2) si el daño es suficiente para requerir la adjudicación. *Romero Barceló v. E.L.A.,* 169 DPR 460, 470 (2006). En cuanto a la ocurrencia del daño, la madurez no requiere que este ya haya ocurrido. "Todo lo que se necesita para asegurar que un caso esté maduro es que el evento contemplado [...] con toda probabilidad va a ocurrir". *Com. Asuntos de la Mujer v. Srio. de Justicia,* 109 DPR 715, 723 (1980).

### Opiniones Consultivas

Las opiniones consultivas son las ponencias legales emitidas "por un tribunal cuando no tiene ante sí un caso o controversia justiciable, y cuyo resultado, por lo tanto, no es obligatorio". *Ortiz v. Panel F.E.I., supra,* pág. 251. (Énfasis suprimido). Trata de una determinación tomada "en el vacío, en el abstracto o bajo hipótesis de índole especulativa". *Com. Asuntos de la Mujer v. Srio. Justicia, supra,* pág. 721. Los tribunales están impedidos de emitir opiniones consultivas puesto que sus deberes son resolver controversias genuinas y no actuar como consejeros o asesores. *Íd.* En este sentido, las opiniones consultivas resumen las doctrinas de

justiciabilidad discutidas, puesto que una determinación tomada que esté académica, no esté madura o que la parte promovente carezca de legitimación activa producirá una opinión consultiva, que no tendrá efectos prácticos sobre las partes o sus derechos.

## C.

El proceso de transición debería ser uno eficiente, económico y transparente. Así surge de la Exposición de Motivos de la Ley del Proceso de la Transición del Gobierno, Ley Núm. 197-2002, según enmendada, 1 LPRA sec. 458 *et seq.* (Ley de Transición), que regula las transiciones del Gobierno estatal. No obstante, sus disposiciones y fines políticos deben servir para darle sentido e identificar la intención legislativa del proceso de transición municipal.

> Una transición ordenada y eficiente es imperativa. El más alto interés democrático que reviste un proceso eleccionario no puede completarse, si el proceso de transición de gobierno no se culmina por la falta de cooperación y la arbitrariedad del Gobierno saliente al determinar la información que habrá de ofrecerse al Gobierno entrante. Las interrupciones al flujo de información en un proceso de transición, las contrataciones durante el proceso transicional, y los nombramientos indebidos o motivados por cuestiones políticos partidistas podrían tener efectos adversos a largo plazo para la administración entrante.

*Íd.*, Exposición de Motivos.

El proceso de transición municipal, que surge del Artículo 2.001 del Código Municipal, s*upra,* "se lleva a cabo con el fin de que el alcalde incumbente que no resulte reelecto en unas elecciones generales haga entrega de la administración del municipio a quien le suceda en el cargo". *Romero Lugo v. Cruz Soto*, 205 DPR 972, 990 (2020). El Artículo 2.001 del Código Municipal, *supra,* establece una serie de deberes y funciones que tiene un Alcalde Saliente al momento de iniciar el proceso de transición. Dicho sea de paso que las obligaciones del ejecutivo municipal incumbente constituyen un deber ministerial, establecido por ley. Así dispone el Artículo 2.001 (c) que "[t]odos los Alcaldes, sus representantes o funcionarios

designados tienen la obligación y el deber ministerial de participar en el proceso de transición de su municipio". En el caso del Alcalde Saliente incumplir con su deber ministerial de participar con el proceso de transición, el Alcalde Electo tendrá el remedio de *mandamus* para ordenar su cumplimiento.

El proceso de transición municipal tiene una vigencia, por lo que el Artículo 2.001 (b) establece que el mismo comenzará el decimoquinto (15°) día luego de celebrarse las Elecciones Generales, y culminará en o antes del 31 de diciembre del año eleccionario. Para el año 2024, el término de transición municipal debió haber comenzado el 20 de noviembre de 2024 y durará hasta el 31 de diciembre de 2024, al menos que el proceso termine antes. Durante este término, los Comités de Transición constituidos, el Saliente y el Entrante, deberán cumplir las funciones y obligaciones que establece el Artículo 2.001. Entre dichas funciones, el Artículo 2.001 (e) del Código Municipal dispone para la presentación de un Informe de Transición que debe cumplir con lo siguiente:

(e) Informes de Transición

Los miembros del Comité de Transición rendirán un informe escrito al Alcalde Electo sobre el estado general de las finanzas y de la administración municipal. Copia de este informe deberá radicarse en la Secretaría de la Legislatura Municipal, para que se remita copia a los Legisladores Municipales electos. Los informes de transición de cada municipio incluirán, sin limitarse a, la siguiente información y documentos:

(1) Descripción detallada e información de la situación de los recursos humanos incluyendo el: número de empleados regulares de carrera, probatorios de carrera e irregulares, transitorios y de confianza. Relación de puestos y vacantes con expresión de las clases, escalas y salarios, sin incluir los nombres de los empleados.

(2) Copia del plan de clasificación de puestos y retribución uniforme vigente y propuesto.

(3) Situación actual de cada una de las unidades administrativas del municipio.

(4) Informe Financiero del municipio, con copia de todas las auditorías realizadas, así como el Estado Financiero Auditado o single audit.

(5) Copia del inventario de la propiedad del municipio.

(6) Descripción detallada y estado de todas las acciones judiciales en las que el municipio sea parte y que estén pendientes en los tribunales de Puerto Rico y de Estados Unidos de América.

(7) Descripción detallada de las subastas en proceso y las adjudicadas en los últimos doce (12) meses.

(8) Compilación de todos los reglamentos, memorandos, circulares y normas propias del municipio.

(9) Una lista de todas las leyes y ordenanzas aprobadas.

(10) Copia de los Planes de Acción Correctiva presentados a la Oficina del Contralor y cualquier comunicación pendiente al respecto.

(11) Informe de los contratos vigentes, la cuantía, vigencia y una descripción de los servicios contratados. Asimismo, deberá incluir copia de todos los contratos vigentes.

(12) Informe detallado sobre los servicios que ofrece la Administración.

(13) Informe detallado sobre el estatus del Plan de Ordenamiento Territorial. Asimismo, copia de todo documento relacionado al mismo.

(14) Se podrá requerir cualquier otra información o documento que por acuerdo de los Presidentes de los Comités de Transición Saliente y Entrante, sea necesario divulgar. Además, se podrá requerir una relación de las cuentas por cobrar y cuentas por pagar.

*Íd.*, Artículo 2.001 (e).

(n) Informe Final

(a) Luego de que concluya el Proceso de Transición, el Comité de Transición Entrante confeccionará un informe por escrito que se titulará "Informe Final del Proceso de Transición".

(b) El "Informe Final del Proceso de Transición", incluirá los aspectos más importantes y significativos de la información obtenida durante todo el Proceso de Transición.

(c) El Comité de Transición Entrante entregará el "Informe Final del Proceso de Transición" al nuevo Alcalde y al Alcalde Saliente no más tarde de siete (7) días después de concluido el proceso de transición, el cual debe finalizar no más tarde del 31 de diciembre del año eleccionario. El Comité de Transición Entrante, además, publicará este Informe Final en la Internet para facilitar su acceso a la ciudadanía y personas interesadas.

*Íd.*, Artículo 2.001 (n).

Del texto del Código Municipal, se desprende que el proceso de transición no es uno unilateral, sino que **ambos comités constituidos deben colaborar para asegurar una transición ordenada**, para el beneficio de la ciudadanía. No podemos olvidar que el proceso de transición está revestido de un alto interés público, puesto que una transición desorganizada no solamente perjudica a la administración municipal entrante, sino también a los ciudadanos del municipio, que podrán ver sus vidas afectadas por la interrupción de servicios. *Véanse* Ley de Transición, *supra*; *Romero Lugo v. Cruz Soto, supra.* El incumplimiento con este deber podrá resultar en la imposición de sanciones o penalidades, incluyendo una acción criminal en contra del funcionario municipal o integrante del comité de transición. *Íd.*, Artículo 2.001 (p).

**III.**

Al considerar la totalidad del caso, concluimos que existe un problema de justiciabilidad que nos impide intervenir en el presente recurso. Como hemos discutido, el auto de *mandamus* es el recurso extraordinario para obligar a una parte a cumplir con un deber ministerial cuando está incumpliendo. Si bien no se tiene que alegar un daño concretizado o inminente, el *mandamus* no se puede conceder a base de meras especulaciones o situaciones hipotéticas.

En la *Petición de Mandamus*, el Alcalde Electo señaló que tenía conocimiento de que:

(1) El Comité Saliente pretende entregar la mínima información con relación al uso de los fondos esbozados en el presupuesto

del Municipio, uso de fondos federales y nombramientos realizados durante el proceso de veda electoral.

(2) Empleados de confianza del Comité Saliente tienen la intención de renunciar antes de que se cumpla con el término que establece el Código Municipal para que se efectúe el proceso de transición.

(3) El Municipio de Villalba recesará operaciones a partir del 15 de diciembre de 2024.

(4) Los Informes de Transición que prepara el Comité Saliente se limitará a información básica y requerirán que el Comité Entrante tenga que recurrir a otras agencias para conseguir dicha información.

Mediante la *Petición de Mandamus*, el Alcalde Electo también solicitó que el TPI le ordenara al Alcalde Saliente y su Comité de Transición que presentase el Informe de Transición. Aunque es cierto que el Informe fue presentado fuera del término dispuesto por el Código Municipal, el mismo fue presentado el 27 de noviembre de 2024.

Lo cierto es que las partes no han puesto a este Tribunal en posición de variar lo determinado por el foro de origen. Es decir, en estos momentos, no existe un remedio en ley que este Foro le pueda proveer a las partes. Por consiguiente, resulta forzoso resolver que la controversia de autos no es justiciable, ello por no existir intereses antagónicos entre las partes que ameriten nuestra intervención. En ausencia de una disputa legítima entre las partes, debemos desestimar el presente recurso por falta de jurisdicción.

**Ahora bien, la desestimación del caso no equivale a que el proceso de transición municipal del Municipio de Villalba haya concluido. Le recordamos a las partes que el Artículo 2.001 del Código Municipal dispone que el proceso de transición deberá culminar en o antes del 31 de diciembre de 2024. Hasta aquella**

**fecha, <u>tanto el Alcalde Saliente como el Alcalde Electo deberán continuar cumpliendo con el proceso que dispone la Ley</u>. De no cumplir con el Artículo 2.001 del Código Municipal, se podrá recurrir ante los tribunales para ordenar el cumplimiento. Existe un alto interés público en que los funcionarios encomendados con el proceso de transición cumplan a cabalidad con las disposiciones de la ley, así asegurando el buen manejo del erario, la continuidad de servicios a la ciudadanía y la confianza en los gobiernos municipales. En virtud de ello, los tribunales tienen el deber de exigir el estricto cumplimiento con la letra de la ley y asegurar un proceso de transición ordenado y completo**.

Atendido el asunto de justiciabilidad, no es necesario resolver los errores planteados.

### IV.

Por las razones discutidas, desestimamos el presente recurso.

Notifíquese **inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones